**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **PETER JAMES** | * | |
| | * | |
| **Plaintiff** | * | |
| | * | |
| **v.** | * | **Civil No. PJM 08-2821** |
| | * | |
| **WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY** | * | |
| | * | |
| | * | |
| **Defendant** | * | |

**AMENDED MEMORANDUM OPINION**

Peter James brought this action against the Washington Metropolitan Area Transit Authority (WMATA), alleging violation of his rights of freedom of speech and association under the United States Constitution and the Maryland Bill of Rights.[1] *See* U.S. CONST. amend. I; MD. CONST. art. 40.

WMATA has filed a Motion to Dismiss, or, in the Alternative, Motion for Summary Judgment [Paper No. 13], asserting that James has failed to state a claim upon which relief can be granted. James contends, *inter alia*, that WMATA's regulation regarding free speech activities is unconstitutional on its face or as applied to him.

On October 24, 2008, the Court held a hearing on James' Motion for a Temporary Restraining Order, at which James testified, as did WMATA Police Sergeant James Holmes, a witness for WMATA and the only named WMATA employee with whom James had contact.

---

[1] James originally filed suit in the Circuit Court for Montgomery County, Maryland. The case was removed to this Court based upon the WMATA Compact, Pub. L. 89-774, para 81 (1966) (as amended), *reprinted in* MD. CODE ANN., TRANSP. § 10-204(81), which provides that U.S. district courts "shall have original jurisdiction, concurrent with the Courts of Maryland, Virginia and the District of Columbia of all actions brought by or against [WMATA] . . . ."

The evidence offered at the hearing forms the basis for the Court's alternative grant of WMATA's Motion for Summary Judgment.

For the following reasons, WMATA's Motion to Dismiss is **GRANTED**. Alternatively, WMATA's Motion for Summary Judgment is **GRANTED**.

**I.**

James was a candidate for U.S. Congress in Maryland's Fourth District in the Fall of 2008. As part of his campaign, he sought to display campaign signs and distribute flyers in both the confined and open portions of WMATA (Metro) subway stations, as well as to speak about his candidacy to commuters entering and exiting the Metro stations. James alleges that, on at least five separate occasions, WMATA employees prevented him from campaigning effectively in and around Metro subway stations. Specifically, he contends that these employees used intimidation and threats of arrest to prevent him from hanging campaign signs, distributing fliers, displaying free-standing signs, and speaking to commuters.

WMATA admits to removing a large campaign banner that James had affixed to a railing adjacent to the sidewalk outside a Metro station, but disputes all the other conduct alleged. It claims that any actions taken by its employees were taken pursuant to the WMATA Use Regulation, which regulates free speech activity on WMATA property. The Use Regulation prohibits, among other activities, the display of signs larger than 18" x 18", the affixing of any material to WMATA property, and any free speech activities in the below-ground, paid areas of the station platforms.[2]

---

[2] Section 100.10 of the Use Regulation, entitled "Free Speech Activities," states in pertinent part:

James initially sought a Temporary Restraining Order from the Court to enjoin WMATA from inhibiting his free speech activities prior to the election. After a hearing on October 24, 2008, the Court denied that request. James now seeks permanent injunctive relief against WMATA, as well as compensatory and punitive damages.

**II.**

**A.**

To survive a Fed. R. Civ. P. 12(b)(6) Motion to Dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007). In making its determination, the court must consider all well-pleaded allegations in a complaint to be true, and must construe all factual allegations in the light most favorable to the plaintiff. *GE Inv. Private Placement Partners II v. Parker*, 247 F.3d 543, 548 (4th Cir. 2001). However, the court need not accept conclusory factual allegations devoid of any reference to actual events. *E. Shore Markets, Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175,

---

> (b) Location. Free speech activities are permitted in the free-area–"above ground" of Metro stations. All free speech activities are to take places at a distance greater than fifteen (15) feet from any escalator, stairwell, faregate, mezzanine gate, kiosk, or fare card machine. In no instances are any free speech activities to take place in the paid or platform areas of the station, or in the underground portions of stations. No free speech activities may interfere with the pedestrian traffic flow in the usual egress and ingress to the station proper or to the faregate.
> . . . .(d) . . . . Those carrying out free speech activities will not:
> (1) Distribute food or drink or tobacco.
> (2) Post any commercial signs, advertisements, circulars, or printed material.
> (3) Set up any tables or other portable equipment. This prohibition does not apply to official use by local jurisdictions at those stations where WMATA has determined that space is available.
> (4) Carry any signs or placards that are more than 18" x 18" or are affixed to a pole.
> (5) Affix any material to any part of the WMATA structure.
> (6) Permit leaflets or other printed material to be left unattended.

180 (4th Cir. 2000). A document filed *pro se* should be "liberally construed," and, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (internal quotation marks omitted); *cf.* Fed. R. Civ. P. 8(f) ("All pleadings shall be so construed as to do substantial justice.").

**B.**

A party is entitled to summary judgment if the evidence in the record "show[s] that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The court is obligated to view the facts, as well as inferences drawn from the facts in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Comp. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986). However, "[a] mere scintilla of evidence is not enough to create a fact issue." *Barwick v. Celotex Corp.*, 736 F.2d 946, 958-59 (4th Cir. 1984) (quoting *Seago v. N.C. Theatres, Inc.*, 42 F.R.D. 627, 640 (E.D.N.C. 1966), *aff'd*, 388 F.2d 987 (4th Cir. 1967)). There must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986) (citations omitted).

**III.**

The Court agrees with WMATA that its Use Regulation is not unconstitutional on its face or as applied to James.

**A.**

To determine whether a restriction on free speech is facially unconstitutional, a court

must first determine whether the forum being regulated is a public forum. *See Lehman v. City of Shaker Heights*, 418 U.S. 298, 303 (1974). The court then applies the appropriate level of scrutiny depending on whether the forum is public or not. *See id.* at 303-04.

To qualify as a public forum, a space must be one either dedicated to free speech activities or one to which the public has traditionally enjoyed a right of access. *See Members of the City Council of L.A. v. Taxpayers for Vincent*, 466 U.S. 789, 814 (1984). Merely permitting limited discourse, absent the intentional opening of a nontraditional forum for public discourse, does not create a public forum. *See United States v. Kokinda*, 497 U.S. 720, 730 (1990). City buses, for example, are not public fora because there are "no open spaces, no meeting hall, park, street, corner, or other public thoroughfare." *Lehman*, 418 U.S. at 303 (upholding restrictions on use of bus advertising space for political campaign signs even though commercial advertisements were permitted); *see also Kokinda*, 497 U.S. at 730 (sidewalk leading up to post office is not a public forum); *Taxpayers for Vincent*, 466 U.S. at 814 (municipal utility poles are not public fora).

Restrictions on speech in public fora face the greatest scrutiny. *See, e.g.*, *Pleasant Grove v. Summum*, 129 S. Ct. 1125, 1132 (2009). To pass constitutional muster, a restriction on free speech in a public forum must be content-neutral, narrowly tailored to advance a compelling government interest, and must leave ample alternative channels of communication. *See Perry Ed. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983); *Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 293 (1984) (Kennedy, J., concurring). "Narrowly tailored" means that the restriction does not burden more free speech than necessary, *Hill v. Colo.*, 530 U.S. 703, 728 (2000), but the restriction "need not be the least restrictive or least intrusive means"

available. *Ward v. Rock Against Racism*, 491 U.S. 781, 798 (1989). Ample alternative channels of communication exist where, for example, the message intended to be conveyed through a sign could easily be communicated orally. *See Taxpayers for Vincent*, 466 U.S. at 812.

If the forum is not public, scrutiny is less stringent. In that case, to be constitutional, the restriction on free speech need only be reasonable, *i.e.*, not arbitrary, capricious or invidious. *Lehman*, 418 U.S. at 303. For example, a city bus system's restriction on all political advertisements has been held reasonable, even when commercial advertising was permitted, because of the captive audience present on municipal buses and the risk of apparent endorsement of one candidate or viewpoint over another. *Id.* at 304.

In the present case, two areas are being regulated: the above-ground areas of WMATA stations and the below-ground, paid areas of the stations. Assuming the above-ground areas are public fora, *see Cmty. for Creative Non-Violence v. Turner*, 893 F.2d 1387, 1391 (D.C. Cir. 1990), WMATA may still regulate free speech if the regulations are content-neutral, "narrowly tailored," and "leave open ample alternative channels for communication." *See Clark*, 468 U.S. at 293 (Kennedy, J., concurring). The Court holds that WMATA's Use Regulation is content-neutral because it applies irrespective of the content of any free speech activity being regulated. It is also narrowly tailored; though, subject to certain distance provisions, the Use Regulation strictly prohibits the affixing of any sign, banner or material to WMATA structures, it permits the display of signs smaller than 18" x 18", leafleting, and oral communication with commuters in the above-ground areas. Thus, the Use Regulation is tailored to prohibit only those speech activities that may reasonably be considered to hinder the provision of safe and efficient public transportation. The regulation also leaves open sufficient alternative channels of

communication. *See, e.g.*, *Turner*, 893 F.2d at 1393 ("In considering whether a regulation leaves open ample alternative channels of communication, the Court has generally upheld regulations which merely limit expressive activity to a specific part of the regulated area or to a limited time frame.").

As to the below-ground areas, these are not public fora because they are not expressly dedicated to free speech activities–as the Use Regulation itself confirms–nor is there a traditional right of access to WMATA platforms. *See Perry*, 460 U.S. at 47 ("Selective access does not transform government property into a public forum."). The below-ground areas are very much like the inside of a city bus; they are, "although incidental to the provision of public transportation, . . . part of the commercial venture." *Lehman*, 418 U.S. at 303 (similar regulation regarding city bus system burdened no more speech than reasonably necessary to achieve the legitimate government interest in "provid[ing] rapid, convenient, pleasant and inexpensive service to commuters"). As such, the question is whether the Use Regulation is reasonable. The Court finds that it is because WMATA patrons amount to a captive audience, and there is a risk that WMATA may appear to endorse one view or candidate over another. *See id.* at 303 (holding this government interest reasonable enough to justify a prohibition on political advertising on city buses). In addition, alternative free speech activities remain available in WMATA stations. *Cf. id.*

**B.**

James also alleges that WMATA employees violated his constitutional rights in applying the Use Regulation to his campaign activities. Though not so pleaded, the Court accepts that this is essentially a 42 U.S.C. § 1983 claim.

To plead a Section 1983 claim, a plaintiff must allege that a person, acting under the color of law, deprived the plaintiff of a constitutionally protected right. 42 U.S.C. § 1983. A restriction–including intimidation–amounts to a deprivation of First Amendment rights when the restricting conduct "'directly and substantially' interfere[s]" with associational and speech rights. *Lyng v. Int'l Union*, 485 U.S. 360, 367 (1988) (citing *Lyng v. Castillo*, 477 U.S. 635, 638 (1986)). "[T]he existence of a 'chilling effect,' even in the area of First Amendment rights, has never been considered a sufficient basis, in and of itself, for prohibiting state action." *Younger v. Harris*, 401 U.S. 37, 51 (1971).

As a threshold matter, WMATA is not subject to claims arising under Section 1983 because it is not a "person" for purposes of that statute. In *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989), the Supreme Court ruled that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." WMATA is an interstate compact agency and instrumentality of Maryland, Virginia, and the District of Columbia, which shares in the Eleventh Amendment sovereign immunity of its signatory states. *See Lizzi v. Alexander*, 255 F.3d 128, 132 (4th Cir. 2001) ("WMATA possesses Eleventh Amendment immunity."), *overruled in part on other grounds by Nevada Dep't. of Human Resources v. Hibbs*, 538 U.S. 721 (2003). As such, WMATA is not subject to suit under Section 1983. *See Disability Rights Council of Greater Washington v. WMATA*, 239 F.R.D. 9, 20 (D.D.C. 2006) (dismissing a § 1983 count "as to WMATA because it is not a 'person' and therefore cannot be sued under the statute"); *Lucero-Nelson v. WMATA*, 1 F. Supp. 2d 1, 7 (D.D.C. 1998) ("as an arm of the state WMATA is not a 'person' within the meaning of" § 1983).

Assuming, *arguendo*, a Section 1983 claim could be stated against WMATA, such a

claim would still fail as a matter of law. WMATA's enforcement of its Use Regulation did not amount to a deprivation of James' First Amendment rights. While he alleges that he was warned and even threatened against carrying on certain campaign activities–namely, the hanging of banners and the posting of signs–he never contends that he was actually prevented from campaigning on WMATA property. The Court finds that this conduct simply did not rise to the level of a direct and substantial interference with James' rights.

**IV.**

James' claims under the Maryland Constitution suffer a similar fate.[3] WMATA, as a "quasi-governmental" entity, *Rodrigues-Novo v. Recchi Am., Inc.*, 381 Md. 49, 71 (2004), is immune from suits arising out of performance of a governmental function, though not those arising from performance of a proprietary function. WMATA Compact art. 80 (adopted by MD. CODE ANN., TRANSP. § 10-204(80)); *see also Lizzi v. WMATA*, 255 F.3d 128, 132 (4th Cir. 2001); *Smith v. WMATA*, 290 F.3d 201, 208 (4th Cir. 2002). The Fourth Circuit has identified a two-step inquiry into whether a given WMATA activity qualifies for immunity: "First, . . . if [WMATA] is engaged in a quintessential governmental function, its activities fall within the scope of its immunity. If [WMATA] is not engaged in such a governmental function, however, a court must proceed to the second inquiry, and it must determine whether the challenged activity is discretionary or ministerial . . . ." *Id.* at 207 (internal citation omitted). If an activity is discretionary, *i.e.*, "choices grounded in regulatory policy," *United States v. Gaubert*, 499 U.S.

---

[3] James does not cite a specific article of the Maryland Constitution, but presumably he intends to invoke Article 40, which states: "[E]very citizen of the State ought to be allowed to speak, write and publish his sentiments on all subjects, being responsible for the abuse of that privilege." Md. CONST. art. 40.

315, 325 n.7 (1991), then "[WMATA] is immune from any claim, 'however negligently caused, that affect[s] the governmental functions.'" *Smith*, 290 F.3d at 207 (quoting *Dalehite v. United States*, 346 U.S. 15, 32 (1953)); *see also Lizzi*, 255 F.3d at 132 ("When a public employee makes a discretionary judgment in performing governmental duties, that judgment is entitled to immunity from liability 'whether or not the discretion involved be abused.'") (internal citation omitted).

The Court finds that the Use Regulation's restrictions on free speech activities are grounded in regulatory policy–specifically, WMATA's policy concerning the promotion of safe and efficient transportation. As such, WMATA is entitled to immunity against claims under the Maryland Constitution.

**V.**

For the foregoing reasons, the Court **GRANTS** WMATA's Motion to Dismiss [Paper No. 13]. Alternatively, insofar as the case may be viewed as one in which undisputed material facts outside the four corners of the Complaint have been developed, WMATA's Motion for Summary Judgment is also **GRANTED**.

A separate Order will **ISSUE**.

/s/
PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE

August 10, 2009